Richard E. Donahoo, State Bar No. 186957
Sarah L. Kokonas, State Bar No. 262875
Judith L. Camilleri, State Bar No. 282503
**DONAHOO & ASSOCIATES**
440 West First Street, Suite 101
Tustin, CA 92780
Telephone: (714) 953-1010
Facsimile: (714) 953-1777
Email: rdonahoo@donahoo.com
        skokonas@donahoo.com
        jcamilleri@donahoo.com

Attorneys for Plaintiffs, et al

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDYN RIDGEWAY and TIM SMITH on behalf of themselves and all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>NABORS COMPLETION & PRODUCTION SERVICES CO., a Delaware corporation; CITY OF LONG BEACH, a California municipality; TIDELANDS OIL PRODUCTION COMPANY, a business of unknown form, and DOES 1 through 200,<br><br>Defendants. | Case No.: 2:15−cv−03436−DDP−VBKx<br><br>District Judge: Dean D. Pregerson<br>Magistrate Judge: Victor B. Kenton<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TIDELANDS OIL PRODUCTION COMPANY'S AND THE CITY OF LONG BEACH'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, COMPEL ARBITRATION PROCEEDINGS**<br><br>Date:   August 24, 2015<br>Time:   10:00 am<br>Dept.  3 |

Plaintiffs BRANDYN RIDGEWAY and TIM SMITH (collectively "Plaintiffs") hereby oppose Defendant TIDELAND OIL PRODUCTION COMPANY'S ("Tidelands") and THE CITY OF LONG BEACH'S ("The City")(herein referred to collectively as "Defendants") Motion to Dismiss, or in the Alternative and Compel Arbitration.

The opposition is based on the attached memorandum of points and authorities, the declarations of Brandyn Ridgeway, Tim Smith and Richard E. Donahoo, and exhibits thereto, Evidentiary Objections to the declaration of Michelle Martinez, the records and pleadings on file and evidence presented at a hearing, if any.

i

# TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT .................................................................... 1

   a.   Tidelands and the City of Long Beach Are Parties Only to the Declaratory Relief Cause of Action And Plaintiffs Bring A Distinct Claim Against Them ........................ 1

   b.   Defendants Do Not Meet Their Evidentiary Burden to Compel Arbitration ............ 2

   c.   The PAGA Claims Are Not Subject to a Motion To Compel ................................... 3

   d.   The Agreement is Procedurally and Substantively Unconscionable and the Unconscionability Permeates the Agreement ................................................................. 3

   e.   Even if the Class / Representative Action Waiver is Stricken and the Agreement Enforced, the Agreement Itself Provides that the Case Remains With this Court Through Class Certification ...................................................................................... 6

   f.   Tidelands and the City Are Not Intended Beneficiaries of the Arbitration Agreement ........................................................................................................... 6

II.   STATEMENT OF FACTS ...................................................................... 6

III.   DEFENDANTS DO NOT MEET THEIR EVIDENTIARY BURDEN TO SHOW MUTUAL ASSENT TO AN ENFORCEABLE AGREEMENT ..................... 9

IV.   PLAINTIFFS' PAGA CLAIM IS NOT SUBJECT TO ARBITRATION ....... 11

V.   THE ABRITRATION AGREEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE ................................................... 13

   a.   The Agreement is Procedurally Unconscionable .................................................. 13

   b.   The Agreement is Substantively Unconscionable .................................................. 14

     i.   Delegation language and language incorporating Rules of AAA and JAMS to all Proceedings Constitutes An Unconscionable Delegation Clause .............................. 15

     ii.   Language Regarding Attorneys' Fees is Unconscionable ................................... 17

ii

iii. Language Prohibiting Default Judgment is Unconscionable ............................... 18

iv. The Agreement Fails to Ensure a Right to More than Minimal Discovery,
Including a Right to Deposition ............................................................................ 18

v.  The Venue Provision Is Unfair ............................................................................ 20

vi. Language Regarding Arbitrator Fees and Costs Is Vague, Ambiguous and
Therefore Unfair .................................................................................................. 20

vii.   The Unilateral Modification Provision Is Substantively Unconscionable ........ 22

**VI. THE UNCONSCIONABILITY PERMEATES THE AGREEMENT AND IT
SHOULD NOT BE ENFORCED** ................................................................................ 22

**VII.  UNDER THE TERMS OF THE AGREEMENT, EVEN IF THE COURT
ENFORCES THE AGREEMENT  THE ACTION MUST PROCEED IN THIS
COURT AT LEAST THROUGH CLASS CERTIFICATION** ................................ 23

**VIII. TIDELANDS AND THE CITY ARE NOT INTENDED BENEFICIARIES OF
THE ARBITRATION AGREEMENT** .................................................................... 24

**IX. CONCLUSION** ................................................................................................. 25

iii

# TABLE OF AUTHORITIES

**Cases**

*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 786, 137 Cal. Rptr. 3d 773 (2012) ................................................................................................................. 16, 17

*Alvarez v. Autozone, Inc*. 2015 U.S. Dist. LEXIS 48447 (C.D. Cal.. April 13, 2015) 13, 15

*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 ... passim

*Arreguin v. Global Equity Lending*, 2008 U.S. Dist. LEXIS 66732, (N.D. Cal. August 29, 2008) at *4.................................................................................................... 19

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)................................................. 16

*Baker v. Osborne Development Corp.* (2008) 159 Cal. App. 4th 884, 888-89................ 17

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005-06 (9th Cir. 2010) ................................................................................................... 3, 9

*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49 ...................................... 22

*Chavarria v. Ralphs Grocery Co.* 733 F. 3d 916 (9th Cir. 2013) ............................... 13, 22

*Cole v. Burns International Sec. Services*, 105 F.3d 1465, (D.C. Cir. 1997) .................. 19

*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237.......................................................................................................... 24

*Davis v. O'Melveny & Meyers*, 485 F.3d 1066 (9th Cir. 2007)......................................... 14

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)....... 20

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 64 Cal. Rptr. 2d 843, 938 P.2d 903 (1997)........................................................................................... 9

*Ferguson v. Countrywide Credit Indus., Inc.*, 298 F. 3d 778 (9th Cir. 2002).................... 13

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ................................................................................................ 16

*Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (2002)................ 20

*Harper v. Ultimo*, (2003) 113 Cal. App. 4th 1402 ......................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION, DISMISS CLAIMS, AND ALTERNATIVELY TO STAY PROCEEDINGS

*Hernandez v. DMSI Staffing, LLC*., 2015 U.S. Dist. LEXIS 12824 (N.D. Cal. Feb. 3, 2015) ............................................................................................... 12, 15

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003), 328 F.3d at 1179 ......... 22

*Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal. 4th 348 .......................... passim

*Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222 .................................... 24

*M. C. & D. Capital Corp. v. Gilmaker* (1988) 204 Cal.App.3d 671 ............................... 22

*Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002 (N.D. Cal. 2011) ................... 22

*Matthau v. Superior Court*, (2007) 151 Cal. App. 4th 593 ............................................... 24

*Mohamed v. Uber Techs, Inc.*, 2015 U.S. Dist. LEXIS 75288 (N.D. Cal. July 6, 2015)  12, 15, 16, 17

*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305 ............................... 13

*Moss v. Underwriters' Report* (1938) 12 Cal.2d 266 ...................................................... 22

*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64 .................................... 24

*Parada v. Super.Ct.* (2009) 176 Cal. App. 4th 1554................................................. 13, 17

*Patterson v. ITT Consumer Fin. Corp.*, (1993) 14 Cal. App. 4th 1659 ........................... 15

*Pokorny v. Quixtar*, 601 F.3d 987 (9th Cir. 2010)...................................................... 9, 14

*Poublon v. C.H. Robinson Co.*, 2015 U.S. Dist. LEXIS 6881, *41-42 (C.D. Cal. Jan. 12, 2015) ............................................................................................................................ 23

*Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) .... 20

*Simmons v. Morgan Stanley Smith Barney, LLC*, 872 F. Supp. 2d 1002, *22 (S.D. Cal. 2012) ............................................................................................................................ 10

*Sonic-Calabasas A, Inc. v. Moreno*, (2013) 57 Cal. 4th 1109 ......................................... 21

*Sparks v. Vista Del Mar Child & Family Servs.*, (2012) 207 Cal. App. 4th 1511 ............. 22

*Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 171 Cal. Rptr. 3d 621 (2014) ......... 16

*Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, 2014 WL 2903752, at *11 16, 17

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION, DISMISS CLAIMS, AND ALTERNATIVELY TO STAY PROCEEDINGS

*Valdez v. Terminix Int'l Co. Ltd. P'ship*, 2015 U.S. Dist. LEXIS 92177 *1 (C.D. Cal. July
14, 2015) ................................................................................................ 3, 12, 15

**Statutes**

8 Cal. Code of Regulations §16001(a) ............................................................... 8

Civil Code § 1670.5(a) ................................................................................... 23

Code of Civil Procedure §1032 ................................................................... 5, 22

Labor Code §§1771, et. seq. ............................................................................ 8

Labor Code §1194 .......................................................................................... 4

Labor Code §1720 .......................................................................................... 8

Labor Code §1774 .......................................................................................... 8

Labor Code §1776 .......................................................................................... 9

Labor Code §1777.5 ....................................................................................... 8

Private Attorney General Act of 2004 ("PAGA") ............................................. 3

**Other Authorities**

IWC Order 16-2001 ....................................................................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL
ARBITRATION, DISMISS CLAIMS, AND ALTERNATIVELY TO STAY PROCEEDINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  SUMMARY OF ARGUMENT

#### a.  Tidelands and the City of Long Beach Are Parties Only to the Declaratory Relief Cause of Action And Plaintiffs Bring A Distinct Claim Against Them

Defendants Tidelands and the City are not named as direct defendants in any employment claim, nor are they names as Plaintiffs' employers, whether or not facts justifying a joint employer status may exist.  Rather, Plaintiffs assert only a single cause of action against these defendants- for Declaratory Relief on a single issue.  Plaintiffs seek a judicial declaration to resolve a single issue.  Plaintiffs allege:

> 62. An actual controversy has arisen and now exists between Plaintiffs, the Class members and Defendants concerning their respective rights and duties in that Plaintiffs contend the work in execution of the Tidelands Contract(s) in the West Wilmington Oil Field, or any part of the work, is a public work under the Labor Code requiring payment of prevailing wages, whereas Defendants, and each of them, dispute these contentions and contend that neither all nor any part of the work under the Tidelands Contract(s) is not a public work and therefore there is no requirement to pay PWL.

> 63.        Plaintiffs and the Class desire a judicial determination of the rights and duties, and a declaration as to the public works coverage of work performed in execution of the Tidelands Contract(s).

> 64.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain the rights and duties under California law with respect to the substantial work now ongoing under the Tidelands Contract(s), including work that is an integral part of major public works projects now ongoing in the Port of Long Beach.

Doc 21, First Amended Complaint, ("FAC") ¶¶62-64.

This issue presented is distinct from the employment related claims asserted against the employer Nabors Completion and Production Services Co ("Nabors"). Plaintiffs and these defendants have not entered into an arbitration agreement, nor are these defendants intended beneficiaries of any alleged arbitration agreement.  The cases cited by Defendants in support of non-signatories obtaining the benefit of the arbitration agreements are primarily cases involving individual defendants who were officers or

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY
OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

directors of the corporate employer and who are named as agents of the principal.   That is distinct from the situation here, where Plaintiffs seek a declaratory relief cause of action against the City and its prime contractor, Nabors.

The situation here is unlike any of the cases cited by Defendants.   Here, a public entity, the City of Long Beach, is engaged in billions of dollars of public works improvements.   In contracting the work as a contracting agency, the City is required to proceed under California law, specifically the Public Contract Code and the Labor Code, among others.   But Plaintiffs allege that the City and its prime contractor are ignoring California law, and that the City is contracting hundreds of millions of dollars of work ignoring requirements under the law.   The request for declaratory relief is now within the proper jurisdiction of the federal court, and it is proper to adjudicate the request for declaratory relief, and to determine if Plaintiffs' allegations are true and if declaratory relief is warranted.   It should not be delegated to an arbitrator without effective power to enforce a judgment against the public entity.

The motion to dismiss does not argue that Plaintiffs' pleading is deficient. Defendants only argument is that the case should be sent to arbitration relying on the Nabors arbitration agreement.   Thus, Defendants concede that unless there is a valid arbitration agreement, enforceable in favor of non-signatories Tidelands and the City, the motion must be denied.

b. Defendants Do Not Meet Their Evidentiary Burden to Compel Arbitration

As to the argument compel arbitration, Defendants' motion to dismiss relies on the same evidence submitted by Nabors in its motion to compel and the motion must denied on the same evidentiary grounds.   The supporting declaration of Michelle Martinez (Doc 28) is without sufficient foundation and fails to establish necessary facts, including that the purported amendment attached to the agreement (which contains the class action waiver) is actually part of the arbitration agreement or was adopted pursuant to the requirements of the agreement. *See*, Plaintiffs' Evidentiary Objections filed concurrently

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

1  herewith.

2          c.  The PAGA Claims Are Not Subject to a Motion To Compel

3          Plaintiffs' claims brought under the Private Attorney General Act of 2004

4  ("PAGA") are not subject to a motion to compel arbitration. See, *Valdez v. Terminix Int'l*

5  *Co. Ltd. P'ship*, 2015 U.S. Dist. LEXIS 92177 *1 (C.D. Cal. July 14, 2015), citing,

6  *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal. 4th 348, 383 ("*Iskanian*")["an

7  employee's right to bring a PAGA action is unwaivable."]

8          d.  The Agreement is Procedurally and Substantively Unconscionable and the

9              Unconscionability Permeates the Agreement

10         The agreement is procedurally and substantively unconscionable and contains

11 multiple unlawful provisions that permeate the agreement and the entire agreement is

12 therefore unenforceable.  See *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,

13 622 F.3d 996, 1005-06 (9th Cir. 2010)(district court did not abuse its discretion refusing

14 to sever numerous substantively unconscionable terms from arbitration agreement).

15         Plaintiffs' declarations, together with the actual wording of the employee

16 acknowledgments, establish that the agreement is a contract of adhesion that is

17 procedurally unconscionable. (See Doc 28-1 p. 2 ¶3, p. ¶3)  Plaintiffs were not afforded a

18 legitimate opportunity to review and agree to the agreement at the time of alleged

19 consent.   It is undisputed that signing the acknowledgments and agreeing to the terms of

20 the agreement was a condition of employment.   The acknowledgement itself provides

21 that it is take-it-or-leave-it, stating that the applicant understands that "if I refuse to sign

22 below that my application will not be considered for employment.  I further understand

23 that my employment application submission with the Company constitutes my

24 acceptance of the terms of this provision [arbitration agreement] as a condition of

25 employment consideration." (Doc 28-1, p.2 ¶3)    But the agreement is not actually

26 provided to the applicant, rather it is only acknowledged to be "available" at "the

27 location" where the applicant applies for employment. (Id.) While the second

28

3

acknowledgement states a copy of the agreement was provided, that is contradicted by the testimony of plaintiffs. Neither plaintiff testifies they were ever provided with the agreement at any time and both only learned of the existence of the agreement after commencing this action. (See Declarations of Brandyn Ridgeway ("Ridgeway") ¶¶16-20; Tim Smith ("Smith") ¶¶16-20)

The agreement is substantively unconscionable. In addition to the class/representative action waiver, the agreement contains additional clauses that are substantively unconscionable and violate California's law governing employment arbitration agreements. *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100. (*Armendariz*), To wit,

(a) The agreement includes delegation language that is neither clear nor unmistakable and is vague and unconscionable; further, it incorporates rules of third party AAA and JAMS to all proceedings without notice of such rules. (Rules, Section 2.C.) The language constitutes an unconscionable delegation clause without adequate notice to the applicant/employee;

(b) The agreement provides that attorneys' fees shall be borne by the Party incurring them **except** as provided by law, **or** as provided "by the Program [the agreement], **or** in the award of the arbitrator," (Section 32.B). Thus, the agreement permits an award of attorneys' fees not limited to the applicable law but in the award of the arbitrator; this prejudices employees who, as here, seek to proceed under one-way fee shifting statutes (Labor Code §1194). Moreover, another section states that if the arbitrator awards fees in such a manner to an *employee* it is limited to $2,500 (See, Section 8 E.) but there is no such limit to an award to Defendant employer against the employee;

(c) The agreement prohibits an award made solely on the default of a Party (Section 18). Thus, a party may fail to appear, and despite its default, the other party may not obtain a judgment. In practice, this makes the agreement one-

4

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

1  sided as it is more often that employees will bring claims against the employer
2  and the employer can avoid judgment simply by failing to engage in the
3  arbitration at all;

4  (d) The agreement fails to provide a *right* to more than minimal discovery. While
5  the language in the agreement states that discovery may take any *"form"*
6  permitted by the FRCP, the *"amount"* and *"frequency"* of discovery is subject
7  to the discretion and restrictions of the arbitrator. The agreement does not
8  provide a right to take a single deposition or to obtain documents other than
9  those that the opposing party intends to present. (Section 11, B. and C);

10  (e) The agreement provides that the location of the arbitration shall be closest to
11  Nabors' worksite, provided Nabors is working there, or at the place "most
12  convenient for the majority of witnesses" which favors Defendants. (Section
13  8.B);

14  (f) The language regarding the employee vis-à-vis employer's obligation to pay
15  arbitration fees is vague and ambiguous and does not provide the employee
16  protection from payment of arbitrator fees if the employee initiates arbitration.
17  Further, the agreement provides that "[d]iscovery costs (e.g., court reporter fees
18  for original transcripts) shall be borne by the Party initiating the discovery"
19  which denies an employee his or her recoverable costs which would otherwise
20  be recovered by a prevailing plaintiff pursuant to a memorandum of costs under
21  Code of Civil Procedure §1032 or the FRCP. This places unnecessary costs to
22  proceeding on the employee;

23  (g) The agreement is amendable solely by the employer, not the employee. The
24  unilateral modification provision is substantively unconscionable.

25  These conditions, together with the class/representative action waiver, make the
26  agreement unconscionable and the taint permeates the agreement and it should not be
27  enforced.

28

5

e. Even if the Class / Representative Action Waiver is Stricken and the Agreement Enforced, the Agreement Itself Provides that the Case Remains With this Court Through Class Certification

Even if the Court were to sever the class action waiver and enforce the remainder of the agreement, the agreement does not permit a dismissal or stay of the action. Rather, the agreement itself provides that in the event that the waiver of class and representative actions is found unenforceable, the Court shall retain the case and proceed to determine class certification. The amendment to the arbitration agreement states:

"[i]f the procedural limitation in Paragraph B of this Section is held unenforceable by a court in a proceeding in which a party seeks to pursue a consolidated, class or collective action or otherwise act in a representative capacity, then this Program shall apply to such proceeding only to the following extent. The court will decide whether the Dispute should proceed on a consolidated, class, collective or other representative basis and, if so, will define the scope of the class. None of the foregoing determinations shall be submitted to the arbitrator, and in no event shall the arbitrator have the power to determine class, collective, or representative action certification."

(Doc 28-3p. 21)

Thus if the agreement is enforceable at all, the Court must retain the case at least through the Court's determination of class certification.

f. Tidelands and the City Are Not Intended Beneficiaries of the Arbitration Agreement

Neither Tidelands nor the City are intended beneficiaries of the arbitration agreement, either expressly or implied. The issues in controversy against Tidelands and the City are not disputes covered by the agreement.

## II.   STATEMENT OF FACTS

The City of Long Beach is a California municipality which engages in public works projects. Many of its public works projects are located at the Port of Long Beach ("the Port"). The City has commenced a decade-long, $4.5 billion capital improvement program to modernize the Port by building new Port terminals, roads, bridges and other

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

1    infrastructure. (FAC ¶16).

2        The Port's capital improvements include redevelopment of existing terminals,
3    building of new wharfs, improvement of the railroad system and replacement of the
4    bridge that serves both as a major commuter route and a conduit for cargo trucks.   Major
5    projects included, but are not limited to, (1) the Gerald Desmond Bridge Replacement, a
6    $1.3 billion project to build a new bridge to span the Port's Back Channel,  (2) the Middle
7    Harbor Redevelopment Project, a modernization of two aging shipping terminals, and, (3)
8    the Pier G modernization, a multi-year renovation of the ITS container terminal and
9    others.  The projects are public works as defined under the California Labor Code and
10   required the payment of prevailing wages.  (See generally, Labor Code §§1720, 1771,
11   1774 et seq.) (FAC ¶17).

12       The City has also contracted for maintenance, construction and demolition in its oil
13   field and pipelines, including wells and pipes located in the Port, and in state tidelands
14   that the City holds in trust and from which the City has extracted oil and gas over the past
15   several decades.   In such areas, the City contracted with a contractor who performs the
16   oil-related work through subcontractors, including defendant Nabors.    Plaintiffs allege
17   that such work is a public work requiring payment of prevailing wages. (FAC ¶18).

18       For such oil-related work, the City has entered into contracts with Defendant
19   Tidelands.  Under the contracts, Tidelands, the contractor, incurred costs of construction,
20   erection, operation, maintenance, repair and abandonment of oil wells and associated
21   structures and equipment, subject to approval of the State Lands Commission. (FAC ¶19)

22       The contractor agreed to sell all of the oil and gas produced and pay the City the
23   net profits calculated after reimbursing the contractor all expenses incurred in the
24   performance of its obligations plus a percent of the profits.  The contractor subcontracted
25   with various companies, including Nabor, for the work of constructing the facilities on
26   the tidelands in order to extract and deliver oil and gas. (FAC ¶20).

27       The work included, but is not limited to, abandoning wells and relocation of oil

28

7

and gas lines.  The work has been routinely performed in connection with, and in support of, the public works improvements taking place at the Port.    For example, as a subcontractor on the City's contract with Tidelands, Nabors has performed, and currently performs work, to relocate and abandon wells in the Port and the work is necessary for the $1.3 billion Gerald Desmond Bridge Replacement project. Nabors employed Operating Engineers normally covered by the PWL in execution of the work, including but not limited to, Drilling Machine Operators, Derrickmen and Fieldhands. (FAC ¶22).

The work of the Gerald Desmond Bridge Project included a design-build contract between the City of Long Beach and a joint venture team headed by Shimmick Construction Co. Inc., FCC Construction S.A. and Impregilo S.p.A. ("SFI")("the Design Build Contract").    The Design Build Contract required that all work be performed in compliance with the California Labor Code, including payment of prevailing wages pursuant to Labor Code §§1771, et. seq.

But despite the fact that the work in the West Wilmington Oil Fields was in execution of the $1.3 billion Gerald Desmond Bridge Replacement Project, neither the City, Tidelands, nor its subcontractors, including NABORS, complied with California public works requirements to pay prevailing wages on public works. (Labor Code §1720, 1771, 1774 et seq.)  (FAC ¶24).

The City and its contractors had been on notice since at least April 26, 2013 that the work performed and awarded to Tidelands is a public work.  On April 26, 2013 the State of California issued its determination pursuant to 8 Cal. Code of Regulations §16001(a) that the work was a "public work" under the Labor Code, thereby requiring payment of prevailing wages.  (See FAC, Exhibit B, "the State Determination").  Despite coverage decision and the ruling in the State Determination, the City and its contractors did not comply with public works requirements, including but not limited to, requirements to pay prevailing wages (Labor Code §1771, 1774 et seq.), hire and train apprentices (Labor Code §1777.5), and to maintain and submit certified payroll records.

1  (Labor Code §1776). (FAC ¶26).

2       An actual controversy had arisen and now exists between Plaintiffs, the City and

3  Tidelands concerning their respective rights and duties in that Plaintiffs contend the work

4  in execution of the Tidelands contracts in the West Wilmington Oil Field, or any part of

5  the work, was a public work under the Labor Code requiring payment of prevailing

6  wages, whereas Defendants dispute these contentions and contend that the project is not a

7  public work and therefore there is no requirement to pay PWL. (FAC ¶63).

8       Plaintiffs desire a judicial determination of the rights and duties, and a declaration

9  as to the public works coverage of work performed in execution of the Tidelands

10  Contracts. (FAC ¶64).   A judicial declaration is necessary and appropriate under the

11  circumstances in order that Plaintiffs may ascertain the rights and duties under California

12  law with respect to the substantial work now ongoing under the Tidelands Contract,

13  including work that is an integral part of major public works projects ongoing in the Port

14  of Long Beach.  (FAC ¶64).

15  **III.   DEFENDANTS DO NOT MEET THEIR EVIDENTIARY BURDEN TO**

16          **SHOW MUTUAL ASSENT TO AN ENFORCEABLE AGREEMENT**

17       Neither Tidelands nor the City submit any evidence in support of their argument

18  that Plaintiffs are bound by an agreement to arbitrate Plaintiffs' claims *against Tidelands*

19  *and the City*.   Rather they rely on the declaration submitted by Nabors, which does not

20  address any evidence relative to the City or Tidelands.

21       The Court must apply contract law to determine whether an agreement to arbitrate

22  exists. See *Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010). The party seeking to

23  enforce arbitration must show by a preponderance of the evidence that the arbitration

24  provision "was a product of a meeting of the minds between the parties." *Bridge Fund*

25  *Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (citing

26  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972, 64 Cal. Rptr. 2d 843,

27  938 P.2d 903 (1997) ("The [party seeking arbitration] bears the burden of proving the

28

9

existence of a valid arbitration agreement by the preponderance of the evidence).  See also, *Simmons v. Morgan Stanley Smith Barney, LLC*, 872 F. Supp. 2d 1002, 1014, \*22 (S.D. Cal. 2012).   Here, Defendants Tidelands and the City rely solely on the Martinez declaration which lacks foundation and, even assuming it is admissible, fails to set forth necessary facts, including the effective dates of the alleged policy and that notice of the amendment was provided.   Even if this Court grants all benefit of doubt in favor of the declaration, at most the declaration proves only that two acknowledgments were found in plaintiff's personnel file. *The acknowledgments say absolutely nothing about Tidelands or the City*. The witness fails provide competent evidence on several key points:

    (1)     that the Dispute Resolution Program document ("agreement") attached to the declaration of Michelle Martinez as Exhibit C (Doc 28-3) was the document found in plaintiffs' personnel file.   While the witness testifies that the two acknowledgements were found in their file (Exhibits A and B), the witness does not specifically testify that Exhibit C was found in their files;

    (2)     that the agreement attached as Exhibit C was the one in effect on the date when plaintiffs applied for employment and/or were hired;

    (3)     that the purported 2007 amendment to the agreement (Exhibit C, Doc 28-3 pp. 21-22) was presented, disclosed or discussed or that the plaintiffs had a legitimate opportunity to read it; or,

    (4)     that the purported 2007 amendment attached to Exhibit C (Doc 28-3 pp. 20-21) was a *bona fide* amendment in that:

            1. notice of the purported amendment was provided to current employees as required pursuant to Section 6.A of the agreement;

            2. notice was provided to JAMS or AAA of the amendment to the Rules as required pursuant to Section 6. B.

*See*, Plaintiffs' Evidentiary Objections, filed concurrently herewith.

10

**Moreover**, **the agreement itself** references that for the agreement to be effective on behalf of third party "corporations or other legal entities," there must be a **written agreement** with Sponsor Nabors. (See Doc 28-3 p. 8 "Electing Entities")  But there is no evidence of such a written agreement and the alleged effectiveness as to third party non-signatories fails.

In addition, the omitted foundational facts are necessary in part because the class and representative action waiver that Defendants seek to enforce is found in a purported 2007 amendment.  Because there is no evidence that the amendment containing the class and representative action waiver was adopted pursuant to the requirements of Section 6, there is no evidence that the amendment was made a part of the agreement pursuant to its terms.  Moreover, while the witness declares that it "is" Nabors policy to provide a copy of the agreement to applicants and employees, the witness does not declare that such a policy was in effect or actually followed when Plaintiffs applied or were employed or that they were provided a copy at any time.  The declaration does not provide necessary foundation to prove that there was mutual assent that Plaintiffs would to be bound by the amendment to the agreement.  In fact, neither plaintiff had any knowledge of the agreement until after their employment terminated and this action was commenced. (Declaration of Ridgeway ¶¶18-20; Smith ¶¶14-20)

Finally, because there is no evidence that Tidelands or the City elected to participate in the agreement and be bound by it, or evidence that the amendment was adopted pursuant to the requirements of the agreement, there is no evidence of mutual assent to the amendment containing the class/representative waiver and the Court must deny the motion on that ground alone.

## IV.    PLAINTIFFS' PAGA CLAIM IS NOT SUBJECT TO ARBITRATION

The agreement contains a purported waiver of class and representative actions. See Doc 28-3 p.21¶4(B).  The clause is unconscionable and unenforceable.

In *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal. 4th 348, the

11

California Supreme Court held that "an employee's right to bring a PAGA action is unwaivable." (*Id.* at p. 383 (emphasis added).) The Court concluded that where "an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and <u>unenforceable</u> as a matter of state law." (*Id.* at p. 384 (emphasis added).) The court also rejected the employer's claim that the arbitration did not violate public policy because it prohibited only representative claims, not individual PAGA claims. Furthermore, the Court found that its holding "does not frustrate the FAA's objectives" as "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship" and "the FAA aims to promote arbitration of claims belonging to the private parties to an arbitration agreement." (*Iskanian*, *supra*, 59 Cal. 4th at pp. 384, 386 & 388.) Accordingly, the Court concluded that "California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the Labor and Workforce Development Agency's interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." (*Id.* at pp. 388-389.) Thus, under California law, an employee's right to bring a PAGA action is unwaivable and an employment agreement waiving this right is unenforceable as against public policy.

Defendants fail to address the federal authority following *Iskanian*, including both in this district and in the Northern District.   Indeed, this Court followed *Iskanian* in its recent decision of *Valdez v. Terminix Int'l Co. Ltd. P'ship*, 2015 U.S. Dist. LEXIS 92177 (C.D. Cal. July 14, 2015)["PAGA claim should not be submitted to arbitration" Id. at *27].   Other district courts have also followed *Iskanian*. See, *Mohamed v. Uber Techs, Inc.*, 2015 U.S. Dist. LEXIS 75288 (N.D. Cal. July 6, 2015)("*Uber*"), *Hernandez v. DMSI Staffing, LLC.*, 2015 U.S. Dist. LEXIS 12824 (N.D. Cal. Feb. 3, 2015)("*Hernandez*") *Alvarez v. Autozone, Inc.* 2015 U.S. Dist. LEXIS 48447 (C.D. Cal..

12

April 13, 2015)("*Alvarez*").  As the agreement contains an explicit (unlawful) PAGA waiver, Defendants cannot, and have not, argued that the Parties contemplated that a PAGA claim could or would be arbitrable.  Here, Plaintiffs allege a cause of action against Defendant Nabors for civil penalties pursuant to the PAGA for violations of Labor Code and IWC Order 16-2001. (*See*, First Amended Complaint ("FAC"), Doc. 21 pp. 16-17)  As the California Supreme Court made clear in its recent decision in *Iskanian*, the real party in interest in this PAGA claim is the state of California. (*Iskanian*, supra, 59 Cal.4th at pp. 386-387 (a PAGA claim "is a dispute between an employer and the state") (italics in original).) By bringing its petition to compel arbitration, Defendant Nabors seeks to force the state of California to relinquish its statutory authority to prosecute this action, by proxy, based on a private agreement to which it was not a party.  Like Defendant Nabor's motion Defendants Tideland and the City's motion must be denied and Plaintiffs' PAGA claim must remain and proceed in this Court.

## V.   THE ABRITRATION AGREEMENT IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE

An arbitration agreement is unconscionable under California law when it is unjustifiably one-sided.    *Parada v. Super.Ct.* (2009) 176 Cal. App. 4th 1554, (2009)(quoting *Morris v. Redwood Empire Bancorp*, (2005) 128 Cal.App.4th 1305.

a. The Agreement is Procedurally Unconscionable

Procedural unconscionability concerns the manner in which the contract was negotiated and respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement. *Chavarria v. Ralphs Grocery Co.* 733 F. 3d 916 (9th Cir. 2013).   *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F. 3d 778, 783 (9th Cir. 2002) In *Chavarria* procedural unconscionability was found where 1) consent to the agreement was a condition of applying for employment, and 2) that the policy was presented on a "take it or leave it" basis with no opportunity for negotiation of

13

1   terms. See also, *Davis v. O'Melveny & Meyers*, 485 F.3d 1066 (9th Cir. 2007)[employer

2   with "overwhelming bargaining power" . . . "drafted the contract and presented it to [the

3   employee] on a take-it-or-leave-it basis"]; *Pokorny v. Quixtar, Inc.* 601 F.3d 987,996 (9[th]

4   Cir. 2010)   Here, Plaintiffs were required to sign an acknowledgment at the time of

5   *application* that states that the applicant acknowledges "that if I refuse to sign below that

6   my application will not be considered for employment." (See Doc 28-1 p.2) More

7   problematic is the fact that it appears the agreement was not actually presented or even

8   provided at time of application.   The acknowledgment only states that the applicant

9   acknowledges the agreement was "available" for review "at the location" of the

10  application.  (Id.) Thus, Plaintiffs were required to assent to the agreement even before

11  being *considered* for employment, let alone hired.  This provision in the employment

12  application is essentially forced assent to the terms of the arbitration agreement without

13  notice.  See,    *Harper v. Ultimo*, (2003) 113 Cal. App. 4th 1402, (contract was

14  procedurally unconscionable because the customer was forced to obtain the terms from

15  another source "to find out the full import of what he or she is about to sign").

16      Here, Plaintiffs were not provided a copy of the agreement (Ridgeway ¶18,

17  Smith, ¶16); Plaintiffs were required to sign the acknowledgment as a condition of

18  application, which was a take-or-leave-it situation.  There was no right to negotiate its

19  terms.  (Ridgeway ¶¶11-14, Smith, ¶¶14-16)  There is no evidence that the agreement

20  was provided at the time of the application when consent to it was initially required. (Id.)

21          b.  The Agreement is Substantively Unconscionable

22      Applying California law, "unconscionability has both a 'procedural' and a

23  'substantive' element." *Armendariz, supra*, 24 Cal. 4th at 114 (citation omitted).

24  California courts have explained the interplay between procedural and substantive

25  unconscionability as follows:

26          The procedural component focuses on the factors of oppression and surprise.
            Oppression results where there is no real negotiation of contract terms because of
27          unequal bargaining power. "Surprise" involves the extent to which the supposedly
            agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the
28
                                                    14

1
2
3

> party seeking to enforce the disputed terms. The substantive component of unconscionability [19] looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner. To be unenforceable there must be both substantive and procedural unconscionability, though there may be an inverse relation between the two elements.

4

*Patterson v. ITT Consumer Fin. Corp.*, (1993) 14 Cal. App. 4th 1659, 1664 (citations omitted).

5    Here, a close reading of the purported agreement exposes the one-sided nature of

6    the agreement and that the agreement lacks a modicum of mutuality.  First, as set forth in

7    Section III, *supra*, the agreement is unenforceable as the waiver of representative claims

8    is violative of public policy, as set forth in *Iskanian,* which has been followed by federal

9    district courts.  See, *Valdez, Hernandez, Alvarez,* and *Uber, supra.*   In addition, other

10   provisions either seek to prevent Plaintiffs from accessing the same remedies they would

11   be able to access should they proceed in court, or unfairly provide rights to Defendant

12   employer that it does not have in court which taints the agreement with unfairness.  The

13   presence of these additional factors, together with the alleged PAGA waiver renders the

14   arbitration agreement substantively unconscionable.

15                  i.  <u>Delegation language and language incorporating Rules of AAA and JAMS</u>

16                       <u>to all Proceedings Constitutes An Unconscionable Delegation Clause</u>

17   Defendant Nabors refers to its agreement as the Nabors Dispute Resolution

18   Program, or as "The Program." (Doc 28-3 pp.3, 5 Section 2 Definitions) [""Program"

19   means this Nabors Dispute Resolution Program, as amended from time to time."]  The

20   agreement provides that the agreement shall apply to all "Disputes" not otherwise settled.

21   (Doc 28-3 p. 6, Section 4.)  The agreement defines "Dispute" to include all claims,

22   demands and controversies, "of whatever nature or kind . . . including but not limited to,

23   any matters with respect to:  1. this Program;"  (Doc 28-3 pp.3-4, Section 2 Definitions)

24   Further, the agreement provides the following language regarding the authority of

25   the arbitrator:

26

> ". . . the arbitrator shall have the authority to determine the applicable law and to order and all relief. legal or equitable. which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceeding."

27   (Doc 28-3 p. 7, Section 8.C.)

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

Section 2.C. of the Rules in the agreement (Doc 28-3 p. 9) states "[t]o the extent consistent with these Rules, the Employment Dispute Resolution Rules of AAA or JAMS also apply to all proceedings governed by these Rules."

Section 30 of the Rules entitled Scope of Arbitrator's Authority (Doc 28-3 p. 16, Section 30.) states:

> "The arbitrators authority shall be limited to the resolution of legal disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law, including that related to the allocation of the burden of proof, as well as substantive law . . . The arbitrator shall be bound by and shall comply with the provisions of the Program and the Rules." (Id.)

The definition of "Dispute," which includes any matters with respect to the agreement, together with the conflicting language in the above sections, including the incorporation of the AAA and JAMS Rules, acts as an unfair and vague delegation clause that is not "clear and unmistakable," and fails to provide notice to the employee. As explained in *Uber*,

'Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" *Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, 2014 WL 2903752, at *11 (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). Thus, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable evidence* that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (emphasis added) (internal quotation marks and modifications omitted) (citation omitted); *see also Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242, 171 Cal. Rptr. 3d 621 (2014) ("There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability") (citations omitted). The "clear and unmistakable" test reflects a "*heightened* standard of proof" that reverses the typical presumption in favor of the arbitration of disputes. *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 786, 137 Cal. Rptr. 3d 773 (2012) (emphasis in original); *see also First Options of Chicago*, Inc. 514 U.S. at 945; *Rent-A-Center*, 561 U.S. at 69 n.1.

*Uber, supra*, 2015 U.S. Dist. LEXIS 75288, *29-30 (N.D. Cal. June 9, 2015)

Here, the delegation of all Disputes, including all matters relating to the agreement itself to the arbitrator, together with the other clauses create a vague and ambiguous

delegation.  Such delegation clauses are neither clear nor unmistakable and may not be enforced.  *Uber, supra*, at *32-33, citing *Ajamian v. CantorCO2e, L.P.*, (2012) 203 Cal. App. 4th 771, 786; *Parada v. Superior Court*, (2009) 176 Cal. App. 4th 1554, 1565-66; *Baker v. Osborne Development Corp.* (2008) 159 Cal. App. 4th 884, 888-89; in *Hartley v. Superior Court*, (2011) 196 Cal. App. 4th 1249, 1256-58.  Moreover, the incorporation of third party rules such as JAMS and AAA Rules only further complicate the conflicting and vague delegation clause and make it further unconscionable.  (See, *Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014 **36-51)

### ii.  Language Regarding Attorneys' Fees is Unconscionable

The agreement provides that attorneys' fees shall be borne by the Party incurring them "**except**" as provided by law, **or** as provided "by the Program [the agreement], **or** in the award of the arbitrator," (Doc 28-3 p. 17, Rules, Section 32.B). Thus, the agreement permits an award of attorneys' fees not limited to the applicable law or the arbitration agreement, but in the discretion of the arbitrator.  This prejudices employees who, as here, seek to proceed under one-way fee shifting statutes. (Plaintiffs seek attorneys' fees under Labor Code §1194; See, Doc 21 FAC, ¶46, Prayer No. 11)  Moreover, another section in the agreement states that if the arbitrator awards fees in such a manner to an *employee* the award is limited to $2,500. (See, Doc 28-3 p. 7, Program, Section 8E.) But there is no such limit to an award to a defendant employer against the employee.  This lack of mutuality prejudices Plaintiffs and chills arbitration and makes the entire agreement unconscionable.

Moreover, this risk of an unfair award of attorneys' fees in favor of the employer, makes the delegation clause (as discussed in the preceding section) unconscionable because employees would risk a judgment for attorneys' fees in litigating the delegation clause language before the arbitrator.  Such language regarding attorneys' fees, together with the vague delegation clause makes the agreement unconscionable. (See *Uber, supra*, at **53-65)

### iii.  Language Prohibiting Default Judgment is Unconscionable

The agreement prohibits an award made solely on the default of a Party (Doc 28-3 p. 13, Rules, Section 18). Thus, the employer may fail to appear, or may fail to pay the arbitrator fees as required, and despite its default, the employee is prohibited from obtaining a default judgment.  In practice, this makes the agreement one-sided as it is more often that employees will bring claims against the employer and an employer can avoid or delay judgment simply by failing to engage in the arbitration at all.   If an arbitrator cannot award an employee a default judgment, what rights does the employee have at all, if the violation of procedures or orders of the arbitrator cannot result in a default judgment?   Such a provision is essentially an "opt-out" clause to the arbitration. If the employer does not like the arbitrator or loses pre-arbitration rulings, it may simply stop paying the fees and participating, without fear of a default judgment.

Defendants may argue the same section allows the arbitrator to <u>proceed</u> in the absence of a party, but again, in practice, that does nothing to mitigate the unfairness. Obviously, the arbitrator will not proceed <u>at all</u> without being paid to do so.  Thus, in the situation where the employer opts-out and declines to proceed and an employee has to <u>proceed</u> with the arbitration to obtain a judgment, it is likely that the employee will have to pay the arbitrator fees.  Arbitrators do not work for free.  If however, there was a risk of default judgment, the employer would be inclined to appear and proceed.  As written, the clause is unfair and in practice it is substantively unconscionable.

### iv.  The Agreement Fails to Ensure a Right to More than Minimal Discovery, Including a Right to Deposition

The agreement's reference to discovery, as drafted by Defendant Nabors, is carefully worded.  (See, Doc 28-3 p. 12, Section 11. A.)  It provides that each side will be entitled to a list of witnesses and the documents that the opposing side intends to present in the arbitration.  Section C provides that discovery may take any *"form"* permitted by the FRCP, but it is "<u>subject</u> to the restrictions of the arbitrator."  Section 11.B. provides

that the "*amount and frequency*" of discovery shall be "determined" at the discretion of the arbitrator.   There is no actual language giving the employee a right to specific discovery other than a list of witnesses and documents.   It does not provide for a single deposition.   The agreement vests the *amount* of discovery solely to the discretion of the arbitrator and fails to provide a *right* to adequate discovery.   The language does not actually provide for discovery.   Any discovery under the FRCP is "subject" to the limitations of the arbitrator who "determines" the "amount" and "frequency."   Thus, the arbitrator would be within the terms of the agreement if in his or her discretion the discovery provides nothing more than a list of witnesses and the documents the opposing side intends to present.

As set forth in *Cole v. Burns International Sec. Services*, 105 F.3d 1465, (D.C. Cir. 1997) an enforceable agreement must "(1) provide[ ] for neutral arbitrators, (2) provide[ ] for  more than minimal discovery, (3) require[ ] a written award, (4) provide[ ] for all types of relief that would otherwise be available in court, and (5) [ ] not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Arreguin v. Global Equity Lending*, 2008 U.S. Dist. LEXIS 66732, (N.D. Cal. August 29, 2008) at *4 (listing the *Cole* factors, and noting that "[b]oth the Ninth Circuit and the California Supreme Court have cited . . . this portion of *Cole* with approval," citing *Armendariz*, supra, 24 Cal.4th at 102).

Here, there is no right to discovery other than a witness list and the documents that Defendants "intend to present." Defendant Nabors, who drafted the document, may in its reply now attempt to read different language into section C, some right to discovery, but it is not there by an objective reading of the section.   Nothing in the agreement's language actually provides a right to a deposition or to any more than those documents that the Defendant "intends to present."   In practice, this would deny a plaintiff pursuing a wage and hour claim, such as Plaintiffs, from the right to their employee file, time cards, payroll documents, and all the documents necessary to prove their claim.   Here,

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

the discovery that plaintiff would seek would include the construction contracts at issue, daily logs, construction diaries and other documents that would be discoverable in in court proceeding.  But unless the employer intended to present those documents, plaintiffs could not obtain them because the agreement does not provide even minimal discovery.  This language drafted by the employer must be strictly interpreted against the drafter.

Indeed, in Plaintiffs' claim for declaratory relief, Plaintiffs would need discovery related to the project and the contracting process, not just their employment documents from Nabors.   Plaintiffs would be severally limited in discovery of their claims against Tidelands and the City.

v.   The Venue Provision Is Unfair

The agreement provides that the location of the arbitration shall be closest to Defendant's worksite, provided Defendant is working there, or at the place "most convenient for the majority of witnesses," a clause which favors Defendant. (Section 8.B); "[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere." *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (2002), citing *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The requirement to have the arbitration closest to the place of work provided Defendant Nabors is still working there, is unfair and favors defendant. The clause should provide that venue is proper in any district of competent jurisdiction.

vi.   Language Regarding Arbitrator Fees and Costs Is Vague, Ambiguous and Therefore Unfair

Under California law, any a clause that would impose costs on a plaintiff's attempt to vindicate unwaivable statutory rights is unconscionable. *Armendariz*, *supra*, 24 Cal. 4th at 110. As the California Supreme Court made clear, " when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Id.* at 110-11 (emphasis in original); See also, *Sonic-Calabasas A, Inc. v. Moreno*, (2013) 57 Cal. 4th 1109, at 1144 (reaffirming *Armendariz's* prohibition on contractual terms that require an "equal division of costs between employer and employee" in arbitration, and that the *Armendariz* rule is not pre-empted by the FAA or *Concepcion*).

The language in the agreement on this issue is vague and ambiguous. (See Doc 28-3 p. 17, Rules, Section 32. "Fees and Expenses"). The agreement states:

> E. The Employee or Applicant shall pay a $150 fee if he or she initiates the arbitration or mediation. Otherwise. Employee/Applicant Parties shall not be responsible for payment of fees and expenses of proceedings under these Rules . . . . .
> F. If the demand for mediation or arbitration is initiated by the Company, such fees will be paid by the Company.

(See Doc 28-3 p. 17, Rules, Section 32.)

The language is vague and ambiguous and may be read to state that the employee is not responsible for arbitrator fees if the Company initiates the arbitration, but is silent as to the situation where the employee initiates the arbitration. This is, at best, a vague and ambiguous provision. At worst, it is a sly method of preserving the right to argue that under the agreement, an employee who initiates arbitration is responsible for fees and expenses.

Plaintiffs submit evidence that local arbitration fees are between $5,500 and 6,500 per day. (Declaration of Richard E. Donahoo ("Donahoo") ¶¶3-4, Exhibit A.) Each of the plaintiffs are wage workers with college degrees or professional occupations and each

21

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION

testify that they cannot afford to pay all or part of such fees and requiring them to do so would likely mean they could not pursue their claims.  (Ridgeway, ¶21; Smith, ¶21)

Moreover, the agreement allocates costs in a manner that prohibits recovery of costs that would otherwise be recoverable to a prevailing employee. The agreement provides that "[d]iscovery costs (e.g., court reporter fees for original transcripts) shall be borne by the Party initiating the discovery."  This clause denies an employee his or her recoverable costs which would otherwise be recovered by a prevailing plaintiff pursuant to a memorandum of costs under Code of Civil Procedure §1032 or the FRCP.   Plaintiffs in a civil action would be entitled to recovery of costs, including costs of court reporter fees for depositions *M. C. & D. Capital Corp. v. Gilmaker* (1988) 204 Cal.App.3d 671, 679;  *Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49; *Moss v. Underwriters' Report* (1938) 12 Cal.2d 266, 275.   The agreement provides that such costs would be borne by Party initiating the discovery, the not prevailing employee.  This is not a mutual term and in practice would burden employees who likely have less resources for recovery of discovery related expenses.

vii.  The Unilateral Modification Provision Is Substantively Unconscionable

The agreement contains a unilateral modification provision (Doc 28-3 p. 6 Section 6 "Amendment") which provides on the Sponsor the right to amend.  The provision is substantively unconscionable under California law. See *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) , 328 F.3d at 1179.  The Ninth Circuit reaffirmed the validity of this determination in *Chavarria, supra*, at 733 F.3d at 926.  See also, *Sparks v. Vista Del Mar Child & Family Servs.*, (2012) 207 Cal. App. 4th 1511, 1523 [an agreement to arbitrate is illusory if the employer can unilaterally modify the contract]; *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1010-11 (N.D. Cal. 2011).

## VI.   THE UNCONSCIONABILITY PERMEATES THE AGREEMENT AND IT SHOULD NOT BE ENFORCED

22

Under Civil Code § 1670.5(a), a court may either refuse to enforce an agreement that is "permeated" by unconscionability, *Armendariz*, *supra*, 24 Cal. 4th at 122, or, alternatively, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." Id. at 124.

Here, there is a taint that permeates the agreement.  The substantive unfairness extends to multiple unconscionable provisions running in favor of Defendant.  Many of these go to the centrality to the agreement, including such issues as the right to pursue a PAGA claim, the recoverability of attorneys' fees, allocation of costs, the right to discovery, venue, and the right to amend. The "court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Armendariz*, 24 Cal. 4th at 125 (explaining that California contract law does "not permit a court to cure a contract permeated with unconscionability "through reformation and augmentation"  See, *Poublon v. C.H. Robinson Co.*, 2015 U.S. Dist. LEXIS 6881, *41-42 (C.D. Cal. Jan. 12, 2015).  The agreement should not be enforced.

## VII. UNDER THE TERMS OF THE AGREEMENT, EVEN IF THE COURT ENFORCES THE AGREEMENT   THE ACTION MUST PROCEED IN THIS COURT AT LEAST THROUGH CLASS CERTIFICATION

The arbitration agreement sets forth that,

> "If the procedural limitation in Paragraph B of this Section is held unenforceable by a court in a proceeding in which a party seeks to pursue a consolidated, class or collective action or otherwise act in a representative capacity, then this Program shall apply to such proceeding only to the following extent.  The court will decide whether the Dispute should proceed on a consolidated class, collective or other representative basis and, if so, will define the scope of the class.  None of the foregoing determinations shall be submitted to the arbitrator, and in no event shall the arbitrator have the power to determine class, collective or representative action certification.  The court's decisions will be subject to appeal pursuant to the applicable rules of procedure.  If the court certifies a class, collective or other

23

representative action, then all other determinations in or related to the Dispute shall be made by the arbitrator . . . ."

Again, the language incorporates improper language in that it contemplates certification of representative actions and referral of representative PAGA actions to arbitration for post-certification proceedings. As stated above, the PAGA representative claims may not be arbitrated. Thus, no matter the decision of this Court regarding unconscionability, if the Court merely strikes the offending clause as to the class/representative waiver, and enforces the agreement, the matter continues in this Court through certification.

## VIII.  TIDELANDS AND THE CITY ARE NOT INTENDED BENEFICIARIES OF THE ARBITRATION AGREEMENT

For a nonsignatory to invoke an arbitration provision in an agreement based on a third party beneficiary theory, the nonsignatory beneficiary first must establish the agreement was applicable to  the controversy. (See, e.g., *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222, 229 [a sole general partner of a limited partnership is subject to arbitration agreement between the partnership and a third party because the general partner is an agent and beneficiary of the partnership and because that agreement is applicable to the lawsuit brought by plaintiff].) *Matthau v. Superior Court*, (2007) 151 Cal. App. 4th 593.

"The common thread … is the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement. In the absence of such a relationship, courts have refused to hold nonsignatories to arbitration agreements." (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 76 *Norcal*); see also *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 243 (*Contra Costa*) ["[a]ll nonsignatory arbitration cases are grounded in the authority of the signatory to contract for medical services on behalf of the nonsignatory —to bind the nonsignatory in some manner"].)

24

Here, Tidelands and the City are third parties who were not named in the agreement.  The agreement itself provides that for third parties to be bound, they must enter into a written agreement with Nabors.  The agreement itself references that for the agreement to be effective on behalf of third party "corporations or other legal entities," there must be a written agreement with Sponsor Nabors. (See Doc 28-3 p. 8 "Electing Entities")   But there is no evidence of such a written agreement and the alleged effectiveness as to third party non-signatories fails.  Moreover, the Tidelands and the City are not agents of Nabors.   Nabors is a subcontractor of Tidelands who is a contractor to the City.  (Doc 21 FAC ¶¶ 1, 18, 22, 24, 25).

Again, the situation here is unlike any of the cases cited by Defendants.   The City of Long Beach is engaged in billions of dollars of public works improvements.  Plaintiffs allege the City and its prime contractor are ignoring California law, and that the City is contracting hundreds of millions of dollars of work ignoring requirements under the law, including the Labor Code.  The request for declaratory relief is now within the proper jurisdiction of the federal court, and it is proper to adjudicate the request for declaratory relief, and to determine if Plaintiffs' allegations are true and if declaratory relief is warranted.   It should not be delegated to an arbitrator without effective power to enforce a judgment against the public entity.

## IX.   **CONCLUSION**

The motion is without merit as it lacks evidentiary support.  Defendant does not meet its burden to show a mutual agreement with competent evidence.  Defendant seeks to arbitrate PAGA claims which are not arbitral under the law.   The agreement is procedurally and substantively unconscionable and the taint permeates the agreement.  For the foregoing reasons, the agreement should not be enforced and the motion should be denied in its entirety.

///

///

25

1   Dated: August 3, 2015

2                                   DONAHOO & ASSOCIATES

3                                   By:
                                        _____
4                                       Richard E. Donahoo
                                        Sarah L. Kokonas
5                                       Judith L. Camilleri
                                        Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TIDELAND AND CITY
OF LONG BEACH MOTION TO DISMISS OR TO COMPEL ARBITRATION