O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDYN RIDGEWAY and TIM SMITH on behalf of themselves and all others similarly situated and the general public,<br><br>           Plaintiff,<br><br>  v.<br><br>NABORS COMPLETION & PRODUCTION SERVICES CO., a Delaware corporation; CITY OF LONG BEACH, a California municipality; TIDELANDS OIL PRODUCTION COMPANY, a Texas General Partnership,<br><br>           Defendants. | Case No. CV 15-03436 DDP (VBKx)<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND DISMISS OR STAY**<br><br>[Dkt. Nos. 26, 29] |

    Presently before the Court are Defendants' Motions to Compel Arbitration. (Dkt. Nos. 26, 28.) Having considered the parties' submissions and heard oral argument, the Court adopts the following order.

**I.  BACKGROUND**

    Plaintiffs Brandyn Ridgeway ("Ridgeway") and Tim Smith ("Smith"; collectively, "Plaintiffs") brought this class action

wage and hour employment dispute against their former employer, Defendant Nabors Completion and Production Services, Co. ("Nabors"), as well as unknown Doe defendants. (First Am. Compl. ¶ 1-2 ("FAC").) Plaintiffs allege Nabors failed to pay prevailing wages on public works, violated California Labor Code sections 203 and 226(a), and violated California Business & Professions Code section 17200. (Id. at 11-17.) Plaintiffs have also alleged a declaratory relief cause of action against Nabors and Defendants City of Long Beach ("Long Beach") and Tidelands Oil Production Company ("Tidelands"), asking the court to find that the work Plaintiffs did for Nabors was "public work" because Nabors was a subcontractor of Tidelands, who had contract with Long Beach. (Id. at 14-15.)

Plaintiffs each signed an Application for Employment ("Application") that stated "I acknowledge that a copy of the Company's Dispute Resolution Program was available for my review at the location where I submitted this application . . . if I refuse to sign below . . . my application will not be considered for employment." (Decl. Michelle Martinez ISO Def. [Nabors] Mot. Compel Arbitration, Dismiss Class & Representative Action Claims, & Stay Proceedings ("Martinez Decl.") Ex. A, B.)

In addition, Plaintiffs each signed an Employee Acknowledgment ("Acknowledgment") that states "I have received a copy of the Nabors Dispute Resolution Program . . . . By my signature below, I acknowledge and understand that I am required to adhere to the Dispute Resolution Program and its requirement for submission of disputes to a process that may include mediation and/or arbitration." (Id.)

2

Ridgeway signed the Application in April 2011 and the Acknowledgment in May 2011. (Decl. Pl. Brandyn Ridgeway ("Ridgeway Decl.") Exs. A, B.) When Ridgeway signed the Application, he did not read the document and he understood that his signature was required to be considered for employment. (Ridgeway Decl. ¶ 16.) Nabors required Ridgeway to sign a "pile of documents," including the Acknowledgment, during safety training as a condition of employment. (Id. ¶¶ 12-13.) Ridgeway did not review the documents and to his knowledge was not provided with a copy of Nabors's Dispute Resolution Program ("arbitration agreement") either when he signed the Acknowledgment or later during his employment. (Id. ¶¶ 16-18; see also Martinez Decl. Ex. C (arbitration agreement).)

Smith signed the Application in January 2012 and the Acknowledgment in February 2012. (Decl. Pl. Tim Smith ("Smith Decl.") Exs. A, B.) Nabors required Smith to sign the "several page" Application during a meeting with Nabors's Human Resources as a condition of employment. (Smith Decl. ¶¶ 9-13.) When Smith signed the Application, he did not read the documents and he understood that his signature was required to be considered for employment. (Id. ¶ 14.) Smith believes he signed the Acknowledgment during a safety training when he was presented with a "number of additional documents to sign" during class. (Id. ¶¶ 16, 18.) To his knowledge, Smith never received a copy of the arbitration agreement either when he signed the Acknowledgment or later during his employment. (Id. ¶ 18.)

The arbitration agreement is divided into two parts. First is an introductory section titled "The Nabors Dispute Resolution

3

Program" and second is a description of the rules of arbitration titled "Nabors Dispute Resolution Rules." (Martinez Decl. Ex. C.)

Defendants have filed motions to compel arbitration and to dismiss or stay Plaintiffs' claims.

**II. LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 <u>et seq.</u>, a written agreement requiring controversies between the contracting parties to be settled by arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party to an arbitration agreement may petition a district court with jurisdiction over the dispute for an order directing that arbitration proceed as provided for in the agreement. <u>Id.</u> § 4.

The FAA reflects a "liberal federal policy favoring arbitration agreements" and creates a "body of federal substantive law of arbitrability." <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). The FAA therefore preempts state laws that "stand as an obstacle to the accomplishment of the FAA's objectives." <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 131 S. Ct. 1740, 1748 (2011). This includes "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue," as well as state rules that act to fundamentally change the nature of the arbitration agreed to by the parties. <u>Id.</u> at 1746, 1750 (California rule allowing consumers to invoke class arbitration post hoc was neither "consensual" nor the kind of arbitration envisioned by the FAA).

On the other hand, "[t]he principal purpose of the FAA is to ensure that *private* arbitration agreements are enforced according

4

to their terms." Id. at 1748 (emphasis added) (internal quotation marks and brackets omitted). Moreover, parties to an arbitration agreement typically cannot bind non-parties to arbitrate. See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 293-94 (2002). Thus, an individual cannot contract away the government's right to enforce its laws, even if the government seeks to recover "victim-specific" remedies such as punitive damages. Id. at 294-95.

**III. DISCUSSION**

The main thrust of this contested motion to compel arbitration is Plaintiffs' argument that the arbitration agreement is unenforceable because it is unconscionable. Plaintiffs also raise evidentiary objections to the proffered arbitration agreement in Exhibit C of the Martinez declaration. (Pls. Opp'n to Nabors at 1, 5-7; Pls. Opp'n to Tidelands/Long Beach at 2, 9-11.) In addition, Defendants Tidelands and Long Beach argue that they can enforce the arbitration agreement despite being nonsignatories to that agreement. (Def. Tidelands/Long Beach Mot. Compel Arbitration at 12-17; Tidelands/Long Beach Reply at 3-4.) Because the question of unconscionability determines the ultimate outcome here, the Court assumes for the sake of argument that Defendants Tidelands and Long Beach can enforce the arbitration agreement and that the agreement provided in Exhibit C is properly before the Court.

**A.   Unconscionability of the Arbitration Contract**

The FAA as well as federal and California case law recognize the standard contract defense of unconscionability is applicable to arbitration agreements. See 9 U.S.C. § 2 (where "savings clause" states that arbitration agreements are to be enforced according to their terms "save upon such grounds as exist at law or in equity

5

for the revocation of any contract"); <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 921 (9th Cir. 2013) (finding employment arbitration agreement unconscionable); <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 114-21 (2000) (same). Plaintiffs here allege that the arbitration agreement is unconscionable and thus unenforceable. (Pls. Opp'n to Nabors at 10-19; Pls. Opp'n to Tidelands/Long Beach at 13-23.)

In California, unconscionability has two elements: procedural unconscionablility and substantive unconscionablility. <u>Armendariz</u>, 24 Cal. 4th at 114. Both elements must be present for a contract to be unconscionable, but the elements need not be present to the same degree — there is a sliding scale between the two where more of one can make up for less of the other. <u>Id.</u>

### 1. Procedural Unconscionability

Here, Plaintiffs argue that there is procedural unconscionability because they did not receive a copy of the arbitration agreement but were required to sign acknowledgments of receiving and agreeing to the arbitration agreement as a condition for employment. (Pls. Opp'n to Nabors at 11; Pls. Opp'n to Tidelands/Long Beach at 14.) Further, they argue that there was no opportunity to negotiate the terms of the contract. (<u>Id.</u>)

Defendants argue that there is no procedural unconscionability because employers can require adhesive arbitration agreements to be included in employment contracts, as was done here, and because Plaintiffs signed acknowledgments stating that they did receive copies of the arbitration agreement. (Def. Nabors Reply at 15; Defs. Tidelands/Long Beach Mot. Compel Arbitration at 19; Defs. Tidelands/Long Beach Reply at 6-7.)

6

Procedural unconscionability "concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time." Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 783 (9th Cir. 2002). A court examines two factors for procedural unconscionability: (1) oppression, which focuses on bargaining power disparity, absence of meaningful choice, and lack of negotiation; and (2) surprise, which refers to hidden terms, prolix forms, and whether the contractual terms meet the reasonable expectations of the weaker party. See id. In Chavarria, the Ninth Circuit found an employment arbitration agreement procedurally unconscionable because it was an adhesive take-it-or-leave-it requirement of continued employment. Chavarria, 733 F.3d at 923.

Here, there is no real debate that consenting to the arbitration agreement was a condition of even applying to work for Defendants, as well as to continue in employment. (See Martinez Decl. Exs. A, B.) Further, there are no facts alleged or provisions in the agreement providing that Plaintiffs could have negotiated different terms, much less that they could have forgone the agreement and still had a job. Therefore, just like in Chavarria, the arbitration agreement is procedurally unconscionable as a nonnegotiable requirement of employment drafted by the employer, who had the greater bargaining power.

**2.  Substantive Unconscionability**

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shock[s] the conscience.'" Chavarria, 733 F.3d at 923 (quoting Parada v. Superior Court, 176 Cal. App. 4th 1554, 1573 (2009)).

Plaintiffs argue seven grounds for substantive unconscionability in the arbitration agreement. However, the Court will only address the determinative grounds.

### a. Scope of Discovery

Plaintiffs argue that the provisions covering the scope of discovery are unconscionable because they do not provide for a right to more than minimal discovery — the case law's minimum standard — as the scope of discovery is completely at the arbitrator's discretion. (Martinez Decl. Ex. C § 11.A-C (in rules section); Pls. Opp'n to Nabors at 16-17; Pls. Opp'n to Tidelands/Long Beach at 18-20.) Defendants argue that the discovery provisions provide for limited but adequate discovery. (Def. Nabors' Mot. Compel Arbitration at 12; Def. Nabors Reply at 8-10; Def. Tidelands/Long Beach at 18; Def. Tidelands/Long Beach at 8.)

Section 11 of the rules section in the arbitration agreement states:

> A. On any schedule determined by the arbitrator, each Party shall submit in advance the names and addresses of the witnesses it intends to produce and any documents it intends to present.
>
> B. The arbitrator shall have discretion to determine the form, amount and frequency of discovery by the parties.
>
> C. Discovery may take any form permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any restrictions imposed by the arbitrator.

In <u>Armendariz</u>, the California Supreme Court adopted the <u>Cole</u> factors for arbitration of statutory rights in employment cases. <u>Armendariz</u>, 24 Cal. 4th at 102 (referring to <u>Cole v. Burns Int'l Sec. Servs.</u>, 105 F.3d 1465, 1482 (D.C. Cir. 1997)). One such

8

factor is that the arbitration agreement must provide "for more than minimal discovery." Id.

In Armendariz, the court found that the arbitration agreement at issue there did provide for adequate discovery. Id. at 104-06. There, the agreement expressly incorporated the California code section that provided rules governing discovery procedures for arbitration. Id. at 105. Further, the court found that parties "are also permitted to agree to something *less than* the full panoply of discovery provided" in that code section, but that parties also "implicitly agree . . . to such procedures as are necessary" to vindicate a statutory claim, such as "access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." Id. at 105-06. The court made clear that employees "are entitled to sufficient discovery" to vindicate statutory claims, and that employers "by agreeing to arbitrate the [statutory] claim, ha[ve] already impliedly consented to such discovery." Id. at 106.

Here, the discovery section explicitly provides for the arbitrator to have discretion in conducting discovery ("form, amount and frequency") and that the discovery "may take any form permitted by the Federal Rules of Civil Procedure, . . . subject to any restrictions imposed by the arbitrator." (Martinez Decl. Ex. C § 11.A-C.) Under Armendariz, the arbitrator must grant sufficient discovery so as to allow effective vindication of Plaintiffs' rights, such access to documents and witnesses, as Plaintiffs argued in their Oppositions. The contract here does not protect or entitle Plaintiffs to such a right, and instead leaves the form, amount, and frequency of discovery to the arbitrator's discretion.

This is insufficient under Armendariz because the arbitrator's only requirement is to ensure parties provide documents and a list of witnesses that they plan to use, which is insufficient discovery for an employee to vindicate statutory claims.

As Plaintiffs pointed out at oral argument, Plaintiffs have no provision for depositions or document requests unless the arbitrator decides to allow for such discovery, and the contract does not provide a standard by which the arbitrator is to decide such requests. In fact, California courts applying the Armendariz rule have found unconscionable arbitration agreements that provided for two depositions, document discovery, and arbitrator discretion for further discovery. See, e.g., Fitz v. NCR Corp., 118 Cal. App. 4th 702, 716-19 (2004). Plaintiffs here are not guaranteed even that much discovery. *A fortiori*, the discovery provisions here are unconscionable as well.

### b. Arbitration Fees and Costs

Plaintiffs claim the provisions covering arbitrator fees and costs are vague, ambiguous, and disadvantageous to employees who may not be able to afford arbitration under the terms provided. (Martinez Decl. Ex. C § 32 (in rules section); Pls. Opp'n to Nabors at 18-19; Pls. Opp'n to Tidelands/Long Beach at 20-22.) Defendants argue that these provisions provide for a maximum filing fee of $150 for employees or applicants who seek to arbitrate grievances, and that the costs of discovery are on each party as would occur in court. (Def. Nabors Reply at 10-11; Defs. Tidelands/Long Beach's Reply at 8.)

Section 32 in the rules section of the arbitration agreement reads:

A. The expenses of witnesses shall be borne by the Party producing such witnesses, except as otherwise provided by law or in the award of the arbitrator.

B. All attorneys' fees shall be borne by the Party incurring them except as otherwise provided by law, by the Program, or in the award of the arbitrator.

C. Discovery costs (e.g., court reporter fees for original transcripts) shall be borne by the Party initiating the discovery. The cost of copies of depositions transcripts or other discovery shall be borne by the Party ordering the copy.

D. The fees and expenses of experts, consultants and others retained or consulted by a Party shall be borne by the Party utilizing those services.

E. The Employee or Applicant shall pay a $150 fee if he or she initiates arbitration or mediation. Otherwise, Employee/Applicant Parties shall not be responsible for payment of fees and expenses of proceedings under these Rules, including required travel of an arbitrator or a mediator, expenses of an arbitrator, mediator, AAA or JAMS, and the cost of any proof produced at the discretion of an arbitrator.

F. If the demand for mediation or arbitration is initiated by the Company, such fees will be paid by the Company.

G. Except as otherwise provided by law or in the award of the arbitrator, all other expenses, fees, and costs of proceedings under these rules shall be borne equally by the Parties who are not Employees/Applicants.

This fee provision is mostly unlike those that have been found unconscionable. For example, in <u>Chavarria</u>, the arbitration agreement split arbitrator fees equally, adding up to amounts of around $3,500 to $7,000 per day in arbitration fees being put on the employee. 733 F.3d at 925-26. Here, the employee pays a maximum of $150 in arbitration fees if the employee or applicant initiates the action, but otherwise the employee or applicant pays no arbitration fees at all.

However, as Plaintiffs argue, the provisions do not allow for costs of litigation — like discovery costs — to be awarded to

11

prevailing plaintiffs after the end of the arbitration. (Pls. Opp'n to Nabors at 19; Pls. Opp'n to Tidelands/Long Beach at 22.) In <u>Chavarria</u>, the court specifically set out that this kind of cost shifting needed to be accounted for in arbitration agreements. 733 F.3d at 925 ("There is no justification to ignore a state cost-shifting provision, except to impose upon the employee a potentially prohibitive obstacle to having her claim heard."). Therefore, the fee provisions are unconscionable in so far as they fail to account for cost-shifting state laws.

### c. Unilateral Modification

Lastly, the parties dispute the unconscionability of section 6, which allows Nabors to unilaterally amend the arbitration agreement provided employees are given ten days notice. (Decl. Michelle Martinez, Ex. C § 6.A.) The section further provides in part B that Nabors "may amend the Rules at any time by serving notice of the amendments on AAA and JAMS." (<u>Id.</u> § 6.B.)

Plaintiffs argue that section 6 is substantively unconscionable based on Ninth Circuit and California Court of Appeal precedent stating that unilateral modification provisions are unenforceable. (Pls. Opp'n to Nabors at 19; Pls. Opp'n to Tidelands/Long Beach at 22.)

Defendants argue that California contract law implies a covenant of good faith and fair dealing that insulates a unilateral modification provision from unconscionability, particularly where the provision requires an employee receive notice of any changes. (Def. Nabors Reply at 13; Def. Tidelands/Long Beach Reply at 9.)

In <u>Asmus v. Pacific Bell</u>, the California Supreme Court interpreted California contract law to allow for unilateral

contract modifications provided that the party's power to do so is limited by fairness and reasonable notice. 23 Cal. 4th 1, 16 (2000). Applying this principle to arbitration contracts, the California Court of Appeal has found that there is an implied covenant of good faith that prevents a unilateral modification provision from rendering a contract illusory because "the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract." Serpa v. Cal. Sur. Investigations, Inc., 215 Cal. App. 4th 695, 706 (2013). Further, "when . . . the agreement is silent as to notice, implied in the unilateral right to modify is the accompanying obligation to do so upon reasonable and fair notice." Id. at 708.

However, the Ninth Circuit has taken the position that unilateral modification provisions can be unconscionable. See Chavarria, 733 F.3d at 926; Net Glob. Mktg., Inc. v. Dialtone, Inc., 217 F. App'x 598, 602 (9th Cir. 2007); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003). In Ingle, the court found a provision similar to the provision at issue here to be unconscionable. See 328 F.3d at 1179. The court found that the employer's grant to itself of unilateral modification power "proscribes an employee's ability to consider and negotiate the terms of her contract." Id. The court was also concerned that the unilateral modification provision was part of an adhesive contract and that the provision solidified the adhesiveness of the agreement, despite any provision for notice to the employee, because only the employer could modify the agreement. Id.

Similarly, the Ninth Circuit affirmed in Net Global that a unilateral modification provision was unconscionable. 217 F. App'x

13

at 602. The court explained that a unilateral modification clause allows an employer to "craft precisely the sort of asymmetrical arbitration agreement that is prohibited under California law as unconscionable." Id. The court went on to state that "because the unilateral modification clause renders the arbitration provision severely one-sided in the substantive dimension, even moderate procedural unconscionability renders the arbitration agreement unenforceable." Id. The court held that the unilateral modification provision tainted the entire agreement with illegality so that it could not be severed; thus, the whole agreement was unenforceable. Id.

In contrast to the decisions of the Ninth Circuit, the recent California Court of Appeal case Casas v. Carmax Auto Superstores California LLC held that "[u]nder California law . . . even a modification clause not providing for advance notice does not render an agreement illusory, because the agreement also contains an implied covenant of good faith and fair dealing." 224 Cal. App. 4th 1233, 1237 (2014). Other California Court of Appeals cases have reached similar holdings. See, e.g., Serpa, 215 Cal. App. 4th at 706; 24 Hour Fitness, Inc. v. Superior Court, 66 Cal. App. 4th 1199, 1214 (1998). But other California Court of Appeal panels have concluded that unilateral modification provisions are unconscionable. See, e.g., Sparks v. Vista Del Mar Child & Family Servs., 207 Cal. App. 4th 1511, 1523 (2012), as modified on denial of reh'g (Aug. 20, 2012).

Federal district courts have reached different conclusions in light of the contrasting California Court of Appeal holdings. The court in Herrera v. CarMax Auto Superstores California, LLC chose

14

to "follow Casas rather than Ingle" and held a unilateral modification provision was not unconscionable. No. CV-14-776-MWF VBKX, 2014 WL 3398363, at *8 (C.D. Cal. July 2, 2014). However, in Mohamed v. Uber Technologies, Inc., the court reached the opposite conclusion and found a unilateral modification clause unconscionable. No. C-14-5200 EMC, 2015 WL 3749716, at *30 (N.D. Cal. June 9, 2015). The court explained that absent controlling California Supreme Court authority, and in light of the conflicting appellate court decisions in California, it would follow Ninth Circuit precedent such as Chavarria and Ingle, consistent with Sparks and Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1010-11 (N.D. Cal. 2011). See also Poublon v. Robinson Co., No. 2:12-CV-06654-CAS MA, 2015 WL 588515, at *10 (C.D. Cal. Jan. 12, 2015) (holding that a unilateral modification provision was unconscionable).

    This Court finds that the reasoning in cases such as Ingle, Chavarria, Sparks, Macias, Mohamed, and others is the right approach to unilateral modification provisions in arbitration agreements. Every contract is subject to the implied covenant of good faith and fair dealing, but this implied covenant should not be what saves a facially unequal and unfair contractual provision. If a contractual provision allows one side, particularly the side with stronger bargaining power, to completely turn an agreement on its head, then there is no reason for a court to go further — this is unconscionable. Courts are admonished to not rewrite contracts for the parties, but that is exactly what the implied covenant is asking the court to do: to write in that an employer, for example, will only modify an agreement if it is fair and reasonable to do

15

so. But the parties did not include that provision, and there is no guarantee that such a provision would be followed absent court intervention. In effect, writing in an implied "fair" and "reasonable" requirement to any modification just further opens the door to litigation on two fronts: first, judicial intervention to determine if a change is fair and reasonable; and second, litigation over the unconscionability of any changed agreement. There is no reason to write in this implied covenant when instead there could be a bilateral modification requirement, or a requirement of no modification without new consideration.

If courts continue to find that parties can do whatever they want to a contract after it is made so long as it is "reasonable," then what is really left of a contract at all? Instead, the covenant is best served by the sanctity of the contract remaining as it was when it was signed absent bilateral agreement. Doing so increases predictability and decreases vagueness, two of the main goals of effective contract writing and also alternative dispute resolution. The benefits of alternative dispute resolution cannot only adhere to the party with the greater bargaining power who drafts an arbitration agreement; an employee, for instance, should also reap the benefits of an increase in predictability when signing such an agreement instead of being subjected to a potentially shifting target.

Looking at section 6 here, the contractual language includes a modest constraint to Nabors's authority to unilaterally modify the arbitration agreement because Nabors is required to give employees ten days notice of any changes. (Martinez Decl. Ex. C § 6.A.) Defendant Nabors further points to the "caveat" in section 6 that

16

"no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed" as evidence of further constraint on the unilateral modification power. (Def. Nabors Reply at 13.) However, this "caveat" is ambiguous to the point of being meaningless. The meaning of the clause "unless otherwise agreed" is unclear in the context of the provision. It could mean that the amendments are unenforceable unless the employee has signed an acknowledgment of the amendments; however, this makes the purpose of unilateral amendments moot if signed acceptance is required. The clause could also possibly mean that continued employment constitutes acceptance of the amendments. In either case, the clause is ambiguous and creates no actual constraint on the employer especially when, as here, there are elements of procedural unconscionability.

Additionally, section 6.B does not require any notice in order for Defendant to change the rules governing the arbitration. The section states that Defendant "may amend the Rules at any time by serving notice of the amendments on AAA and JAMS," but the provision does not provide for notice to employees. (Martinez Decl. Ex. C § 6.B.)

Defendants also argue that since Nabors has not utilized the unilateral modification provision to amend the arbitration agreement during the time Plaintiffs were under the agreement, the provision cannot be unconscionable. (Def. Nabors Reply at 13.) However, "unconscionability is determined as of the time the contract was entered into, not in light of subsequent events." Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th 1305, 1324 (2005). Here, the fact that Defendant has not amended the

17

arbitration agreement since Plaintiffs signed it is not relevant to the unconscionability analysis.

Thus, the Court finds that the unilateral modification provision here is unconscionable. The notice provision — limited as it is — is insufficient to save the provision, as is any implied covenant, which the Court finds cannot save any unilateral modification provision for the reasons mentioned above.

### 3. Sliding Scale of Unconscionability

Both procedural and substantive unconscionability are present here. Several elements Plaintiffs complained of are unconscionable: the fees and costs of arbitration; the discovery provision; and the unilateral modification provision. Because these are some of the most basic terms of the arbitration contract, the Court finds that the contract is not fixable by simply severing the unconscionable terms and allowing arbitration to proceed. Instead, the entire contract is permeated with the unconscionable effects of these provisions and the contract is thus unenforceable.

### B. PAGA and Class Waivers

Defendants all argue that Plaintiffs' PAGA claim is arbitrable and must be arbitrated under the terms of the arbitration agreement's class and representative action waiver. (Nabors Mot. Compel Arbitration at 8-9; Nabors Reply at 16-18; Tidelands/Long Beach Mot. Compel Arbitration at 19-22. But see Tidelands/Long Beach Reply at 7 n.3 (arguing PAGA claim not against them).)

This Court follows the California Supreme Court's analysis in Iskanian v. CLS Transportation Los Angeles, LLC, which found that PAGA claims are not claims on behalf of an individual employee but rather are claims on behalf of the State. See 59 Cal. 4th 348,

18

382-89 (2014).  Thus, the FAA does not preempt PAGA and the claim is not arbitrable under state law.  Id.; see also Valdez v. Terminix Int'l Co. LP, No. CV 14-09748 DDP (Ex), 2015 WL 4342867, at *7-10 (C.D. Cal. July 14, 2015) (this Court finding that PAGA claim was not arbitrable after Iskanian).  The Ninth Circuit has recently affirmed the logic of Iskanian, finding that the FAA does not preempt PAGA and that PAGA claims cannot be waived.  Sakkab v. Luxottica Retail N. Am., Inc., –F.3d–, No. 13-55184, 2015 WL 5667912 (9th Cir. Sept. 28, 2015).  Therefore, the PAGA claim here is also not waivable and the court denies the motion to arbitrate the PAGA claim on this basis.

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motions to Compel Arbitration and to Stay or Dismiss are DENIED.

IT IS SO ORDERED.

Dated: October 13, 2015

DEAN D. PREGERSON
United States District Judge